The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Carlos HANSEN, Defendant–Appellant.

No. 97CA1189.

Colorado Court of Appeals,
Div. A.

April 16, 1998.

Rehearing Denied May 28, 1998.

Certiorari Denied March 8, 1999.

A. William Ritter, Jr., District Attorney, Everett Engstrom, Deputy District Attorney, Denver, for Plaintiff–Appellee.

Randy C. Canney, Denver, for Defendant–Appellant.

Opinion by Judge NEY.

The People appeal the trial court's order granting the Crim. P. 35(c) motion of defendant, Carlos Hansen. We vacate the order and remand with directions.

Following a jury trial, defendant was convicted of attempted second degree murder and first degree assault. He was sentenced to the Department of Corrections for concurrent terms of 12 and 15 years, respectively. Defendant appealed his conviction, but subsequently moved to dismiss the appeal. This court granted defendant's motion, and a mandate of dismissal issued June 9, 1994.

In February 1997, defendant filed a Crim. P. 35(c) motion alleging violations of his constitutional rights to due process, including sufficiency of the evidence, and equal protection. Defendant challenged only his conviction of first degree assault, seeking a new trial on that charge or, in the alternative, substitution of a conviction for second degree assault and resentencing.

Based upon its conclusion that there was insufficient evidence to support what it characterized as a "general verdict" finding defendant guilty of first degree assault, the court vacated defendant's conviction of that charge. Specifically, the court concluded that, although there was sufficient evidence of serious bodily injury in the form of a substantial risk of permanent disfigurement, there was insufficient evidence of a substantial risk of death. And, relying upon *James v. People*, 727 P.2d 850 (Colo.1986) as dispositive, the court found that because the "general verdict" did not distinguish between the forms of serious bodily injury, it was required to vacate defendant's conviction of first degree assault.

Although we might have reached a contrary conclusion, in view of the ambiguity reflected by the treating physician's testimony, we need not resolve the propriety of the trial court's finding of insufficient evidence

concerning a substantial risk of death. Such a resolution is not necessary for our determination of the issue presented here.

The court did not address the remaining issues raised by defendant's Crim. P. 35(c) motion.

As requested by defendant, the court vacated his first degree assault conviction and entered in its stead a conviction of second degree assault. Thereafter, the court resentenced defendant to a term of ten years for assault, to be served concurrently with his original sentence of 12 years for attempted murder.

## I.

As a threshold matter, we note that defendant did not cross-appeal the Crim. P. 35(c) court's determination as to sufficiency of the evidence concerning permanent disfigurement nor its failure to address his remaining contentions.

## II.

The People first contend that the Crim. P. 35(c) court erred by finding that defendant's claim for postconviction relief based upon the sufficiency of the evidence was not barred as an abuse of process. The People argue that defendant was precluded from seeking review of the sufficiency of evidence supporting his conviction when that issue was raised in the trial court and later abandoned on direct appeal. We disagree.

In *People v. Rodriguez*, 914 P.2d 230 (Colo. 1996), the supreme court recognized the importance of finality of judgments, but reiterated its holding that a petitioner may, in some circumstances, raise issues of constitutional error in a postconviction proceeding although the same issues could have been raised effectively on appeal. In so doing, the court distinguished "cases and standards relating to successive postconviction motions, as opposed to cases and standards relating to the initial postconviction motion following prosecution proceedings and, where taken, direct appeal." *People v. Rodriguez, supra,* 914 P.2d at 253. The court specifically distinguished *People v. Bastardo,* 646 P.2d 382 (Colo.1982), relied upon by the People here,

noting that in *Bastardo* consideration of the availability of the defendant's claim on his direct appeal was only one of several factors which together justified denial of his postconviction motion.

Importantly, the *Rodriguez* court expressed its approval of ABA Standards for Criminal Justice, Standard 22–6.1 (2d ed.1986) regarding finality of a conviction and sentence. Pertinent portions of that Standard provide:

(b) Unless barred because of abuse of process, claims advanced in postconviction applications should be decided on their merits, even though they might have been, but were not, fully and finally litigated in the proceedings leading to judgments of conviction.

(c) Where an applicant raises in a postconviction proceeding a factual or legal contention which the defendant *deliberately or inexcusably* (emphasis supplied)

. . .

(ii) having raised the contention in the court, failed to pursue the matter on appeal,

a court may deny relief on the ground of an abuse of process. Abuse of process should be an affirmative defense to be pleaded by the respondent . . . [Except in circumstances not present here], the burden of proof of abuse of process should be borne by the respondent.

Here, the record is devoid of information providing specificity as to the claim defendant abandoned on appeal or the nature of his decision to abandon it. Therefore, the record provides an inadequate basis for a conclusion that his failure to pursue relief initially was deliberate or inexcusable. Under these circumstances, the court did not err in finding that the People had failed to meet their burden of proving an abuse of process.

Accordingly, the court did not err in conducting an initial review of defendant's claim based upon insufficiency of the evidence.

## III.

■ The People contend that the Crim. P. 35(c) court erred in its conclusion that *James v. People, supra,* required defendant's first degree assault conviction to be vacated. We agree.

In *James,* the defendant was charged with first degree sexual assault, the elements of which included three alternative methods of causing the victim to submit and, thereby, three alternative methods of committing the crime. *See* § 18–3–402, C.R.S.1997. The instruction setting forth the elements of first degree sexual assault allowed the jury to convict the defendant if he had knowingly inflicted sexual penetration upon the victim by causing her to submit to him in one of three alternative ways: (1) application of physical force or violence, (2) threat of imminent death, or (3) threat of future retaliation. However, the jury's verdict was returned on a general verdict form that did not specify upon which of the alternatives the verdict was reached. The court found that there was insufficient evidence of the third alternative and that, therefore, because it was impossible to determine that the jury had found unanimously that defendant had committed the act charged, due process required that the general verdict be vacated.

As pertinent here, the crime of first degree assault, like first degree sexual assault, may be committed in several alternative ways. *See* § 18–3–202, C.R.S.1997. Nevertheless, defendant was charged with, and the jury instructed on, only one method of committing the crime, as follows:

> These elements [of first degree assault] are that the Defendant, in the City and County of Denver, State of Colorado, on or about July 25, 1993, with the intent to cause serious bodily injury to [the victim], caused serious bodily injury to [the victim], and did so by means of a deadly weapon [without the affirmative defense.]

*See* § 18–3–202(1)(a), C.R.S.1997.

In addition, the trial court instructed the jury that:

> The term serious bodily injury means any bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part or organ of the body, or breaks, fractures, or burns of the second or third degree.

*See* § 18–1–901(3)(p), C.R.S.1997.

At trial, the prosecution argued that the evidence established three parts of the definition: (1) substantial risk of death, (2) serious permanent disfigurement, and (3) protracted impairment of the function of the victim's hand. The jury returned a verdict finding that defendant had caused serious bodily injury to the victim.

The Crim. P. 35(c) court's rejection of the verdict as insufficient extended the scope of *James* beyond alternative methods of committing a crime, which alternative methods comprise disparate but specific statutory elements of an offense, to alternative statutory *definitions of an element* of the offense. In effect, this extension equates an element of the offense with all, rather than each, of its alternative definitions.

We do not believe that the General Assembly intended that alternative definitions of an element of an offense be equated with alternative methods of committing that particular offense.

The jury, by its unanimous verdict, expressed its conclusion that the prosecution had proven beyond a reasonable doubt that defendant at the specified time and place had intentionally caused serious bodily injury to the named victim by means of a deadly weapon. Therefore, the verdict unanimously found that defendant had violated the statute proscribing that criminal act.

Furthermore, the jury's unanimous determination that defendant had caused serious bodily injury to the victim is evidenced by its rejection of the choice to convict defendant of second degree assault, which requires only bodily injury. *See* § 18–3–203, C.R.S.1997; *People v. Sanchez,* 751 P.2d 1013 (Colo.App. 1988) (jury instructed on both first and second degree assault indicated rejection of argument that victim did not face a substantial

risk of death by its failure to convict of second degree assault).

We agree with the Crim. P. 35(c) court that there is sufficient evidence to support the jury's determination that the defendant had intentionally caused the victim to suffer serious bodily injury, in a form proscribed by statute, by use of a deadly weapon. However, contrary to the trial court, we conclude that the jury thus unanimously found that defendant had committed first degree assault as charged and proscribed by § 18–3–202(1)(a), C.R.S.1997. In consequence, because we conclude that the court erroneously relied upon *James v. People, supra,* to vacate defendant's conviction, the action of the court on that basis cannot stand.

The order of the Crim. P. 35(c) court vacating defendant's conviction of first degree assault and entering his conviction of second degree assault is vacated. The cause is remanded for reentry of defendant's conviction of first degree assault and for reinstatement of his original sentence for that conviction.

Judge MARQUEZ concurs.

Justice ERICKSON * concurs in part and dissents in part.

Justice ERICKSON concurring in part and dissenting in part:

I concur in the majority's conclusion that the trial court erred in setting aside the defendant's conviction for first degree assault, but disagree with the conclusion that the trial court did not err in granting defendant the right to review his conviction for

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

first degree assault pursuant to Crim. P. 35(c).

During the trial, defendant asserted that the evidence was insufficient to convict him of the crime charged and that the evidence failed to establish that the assault created a substantial risk of death. Defendant appealed his convictions to the court of appeals, but subsequently filed a motion to dismiss the appeal which was granted in 1994.

Hence, because defendant had an opportunity to review the issues he now asserts in his post-conviction motion on direct appeal and did not pursue that remedy, I would deny further review. In my view, defendant deliberately, or inexcusably, failed to raise the issues which he asserted during the original trial on direct appeal and should not be permitted review pursuant to Crim. P. 35(c).

Defendant's effort to obtain post-conviction relief is an abuse of process. The trial court should have denied defendant's Crim. P. 35(c) motion for post-conviction relief. *See People v. Rodriguez,* 914 P.2d 230 (Colo.1996) (ABA, Standards for Criminal Justice, Standard 22–6.1 (2d. ed.1986) was approved). That standard is applicable here, and thus, I would reverse the district court's order granting post-conviction relief and remand with directions to reinstate the original judgment of conviction and sentence.

and § 24–51–1105, C.R.S.1997.